IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DION SPEARS, R21654, | ) |
| | ) |
| *Petitioner*, | ) No. 15 C 8401 |
| | ) |
| v. | ) Judge Virginia M. Kendall |
| | ) |
| FRANK LAWRENCE, Warden, | ) |
| Menard Correctional Center,* | ) |
| | ) |
| *Respondent*. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

In 2009, an Illinois jury convicted Dion Spears of first-degree murder and other firearms and narcotics charges. The state court sentenced Spears to a total of 73 years in prison. For the last decade, Spears has fought to overturn those convictions and sentences. On direct appeal, the court vacated Spears's narcotics conviction, but other than that, everything has stayed the same. In 2015, Spears petitioned this Court pro se for a writ of habeas corpus raising a variety of claims. The Court stayed the case while Spears's postconviction petition was pending in the Illinois courts. After the state Supreme Court declined to hear his appeal for a second time, the Warden with custody over Spears answered his petition. Because the state court reasonably applied federal law in rejecting Spears's only cognizable claim, the Court denies his petition (Dkt. 1).

---

* Because Frank Lawrence is now the Acting Warden of Menard Correctional Center, he automatically substitutes in as the respondent. Fed. R. Civ. P. 25(d).

## BACKGROUND

In February 2008, Spears fatally shot Derrick Bey outside a banquet hall in Elgin, Illinois. *See People v. Spears*, 2018 IL App (2d) 151162-U, ¶ 4, *appeal denied*, 111 N.E.3d 968 (Ill. 2018). After a security guard confiscated Spears's revolver, he fled the scene, only to have a car hit him as he was attempting to run across a road. *Id.* When responding paramedics loaded Spears into an ambulance, they discovered a second gun in his pocket. *Id.* At the hospital, Spears regurgitated a baggie of cocaine. *Id.*

**I.  Facts**

On February 13, the State of Illinois charged Spears by felony complaint with: (1) armed violence; (2) aggravated unlawful use of a weapon by a felon; (3) possession of a defaced firearm; (4) unlawful possession of a weapon by a felon; and (5) unlawful possession of a controlled substance. *Id.* ¶ 5. Although a warrant immediately issued for Spears's arrest, the police did not serve that warrant for more than a year because of his extended recovery from his severe injuries in multiple different medical facilities. *Id.*

On January 21, 2009, the State served the Kane County Public Defender's Office with a copy of the charging documents, criminal history, and police reports relating to Spears's case. *Id.* ¶ 6. On February 9, an assistant public defender appeared in court and requested that the court appoint her office to represent Spears and authorize a medical evaluation. *Id.* The assistant public defender indicated that she

did not object to the outstanding warrant because the medical facility was not going to release Spears anytime soon. *Id.*

On March 24, law enforcement arrested Spears when the medical facility released him from its custody. *Id.* ¶ 7. On April 22, a grand jury indicted Spears for two counts of first-degree murder in addition to the charges previously alleged in the felony complaint (except the defaced firearm charge). *Id.* ¶ 8.

Spears moved to dismiss the murder charges arguing that the State violated Illinois's speedy trial statute because more than 120 days had lapsed between February 3, 2008 (the date he went to the hospital, his claimed custody date) and April 22, 2009 (the indictment date). *Id.* ¶ 9. Spears also contended that the pre-indictment delay of 14 months infringed his due process rights. *Id.* ¶ 10.

At the hearing on Spears's motion to dismiss, the detective who investigated the shooting—Brian Gorcowski—testified that a car hit Spears seconds after he fatally shot Bey. *Id.* ¶ 11. The medical professionals did not initially expect Spears to live. *Id.* ¶ 12. When Gorcowski visited Spears at the hospital, he was unconscious and on a ventilator. *Id.* The hospital sent Spears to a nursing home where his condition deteriorated. *Id.* When Gorcowski checked on Spears a few months later, he learned that the nursing home transferred Spears back to a hospital, where he was nonresponsive and in critical condition. *Id.* ¶ 13.

Shortly thereafter, the hospital moved Spears to a rehabilitation facility. *Id.* ¶ 13. When Gorcowski visited Spears at that facility in August or September 2008, he was "propped up in a chair, drooling, and staring blankly at a television set." *Id.*

Although this was an improvement from Spears's previous condition, he remained nonresponsive. *Id.* Spears continued to get better, and in late 2008 or early 2009, he underwent a fitness evaluation. *Id.* ¶ 15. That evaluation revealed that Spears was physically fit to stand trial, so law enforcement executed the arrest warrant and took him into custody. *Id.*

The trial court denied Spears's motion to dismiss the murder charges, determining that the speedy trial "clock" started to run on March 24, 2009, when police officers served Spears with the arrest warrant because he was not in custody up until that point. *Id.* ¶ 17. Seeing that the grand jury indicted Spears less than 30 days later, the trial court decided no speedy trial violation occurred. *Id.*

## II. Procedural History

Spears's case eventually proceeded to trial on the charges of first-degree murder, armed violence, and unlawful possession of a controlled substance. *Id.* ¶ 18. The jury found Spears guilty on all charges. *Id.* The trial court sentenced Spears to consecutive prison terms of 57 years for murder and 16 years for armed violence. *Id.* The court also sentenced Spears to a concurrent prison term of 3 years for unlawful possession of a controlled substance. *Id.* Spears appealed.

### *Direct Appeal*

On appeal, Spears argued that: (1) the evidence at trial was insufficient for the jury to convict him of murder; (2) the trial court erred in denying his motion to sever the murder charges from the armed violence and drug charges; (3) the trial court erred in admitting a recorded statement as substantive evidence under state law; (4)

counsel ineffectively assisted him when counsel failed to object to the recorded statement's admission; (5) the trial court erred in admitting testimony that Spears essentially said that he carried two guns; (6) counsel ineffectively assisted him when counsel neglected to object to that testimony; and (7) his conviction for unlawful cocaine possession should be vacated on one-act, one-crime grounds. *See People v. Spears,* 2014 IL App (2d) 120817-U, ¶¶ 45, 103, 116.

The appellate court vacated Spears's possession conviction and otherwise affirmed his convictions and sentences. *See id.* ¶¶ 120–21. In September 2014, the Supreme Court of Illinois denied Spears's petition for leave to appeal the first six claims he lost on in the appellate court. (Dkt. 44-4, Ex. E, Illinois Supreme Court's order denying Spears's PLA.)

### *Collateral Attack*

Nearly a year later, in September 2015, Spears petitioned the trial court pro se contending that: (1) trial counsel ineffectively assisted him when counsel failed to (a) object to the admission of the recorded statement under the Confrontation Clause, (b) challenge the charging instrument as defective, and (c) contest the constitutionality of a sentence "add on"; and (2) appellate counsel ineffectively assisted him when counsel did not (a) raise the aforementioned ineffective assistance of trial counsel claims, and (b) argue that the trial court violated Spears's due process and statutory speedy trial rights. *See People v. Spears*, 2018 IL App (2d) 151162-U, ¶ 19, *appeal denied*, 111 N.E.3d 968 (Ill. 2018). The trial court dismissed the petition. *See id.*

Spears appealed the dismissal of postconviction relief pro se, asserting only that appellate counsel was ineffective for failing to raise his speedy trial claims. (Dkt. 44-6, Ex. F, Spears's Postconviction Principal Appellate Brief; Dkt. 44-8, Ex. H, Spears's Postconviction Reply Appellate Brief.) The appellate court affirmed the judgment of the trial court. *See Spears*, 2018 IL App (2d) 151162-U at ¶¶ 2, 60. The Illinois Supreme Court denied Spears's subsequent PLA raising the claim that his appellate counsel ineffectively assisted him when counsel did not raise his speedy trial claims. (Dkt. 44-11, Ex. K, Illinois Supreme Court's order denying Spears's postconviction PLA.)

### *Habeas Petition*

In September 2015, while his state postconviction petition was pending, Spears petitioned this Court for a writ of habeas corpus maintaining that: (1) the state trial court erred in admitting the recorded statement (a) as substantive evidence under state law and (b) in violation of the Confrontation Clause; (2) trial counsel ineffectively assisted him when counsel failed to challenge the charging instrument; and (3) appellate counsel ineffectively assisted him when counsel did not raise (a) a Confrontation Clause objection to the admission of the recorded statement, (b) the charging instrument issue, (c) Spears's speedy trial arguments, and (d) a contention that his sentence is unconstitutional. (Dkt. 1 at 5–6.) The Court stayed the federal proceeding so Spears could exhaust his state court remedies, lifting it after the Illinois Supreme Court denied Spears's postconviction PLA in November 2018. (Dkt. 36.)

## STANDARD OF REVIEW

The Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs and greatly limits this Court's review of the Illinois Appellate Court's decision, which was "'the last reasoned opinion on the claim.'" *See Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (internal citation omitted). Under the Act, a federal court may grant a state prisoner's habeas petition only if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court "unreasonably applies" clearly established federal law "if the state court identifies the correct governing legal principle" but "unreasonably applies that principle to the facts of the petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotations omitted). Unreasonable means objectively so, not just that the decision was wrong. *See Felton*, 926 F.3d at 464. In other words, a decision is unreasonable if it lies "'well outside the boundaries of permissible differences of opinion.'" *Id.* (quoting *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015)).

Indeed, "'[t]he bar for establishing that the state court's application of the *Strickland* ineffective assistance of counsel standard was 'unreasonable,' is a high one. So long as [the Court is] satisfied that the [Illinois Appellate Court] took the constitutional standard seriously and produced an answer within the range of

defensible positions," the Court will deny the writ. *Id.* (quoting *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (internal punctuation omitted)).

## ANALYSIS

On May 17, 2019, Warden Lawrence answered Spears's petition insisting that Spears's failure to exhaust state remedies and procedural default bar all claims in his federal habeas petition except the one where he complained that appellate counsel was ineffective when counsel did not raise Spears's speedy trial contentions. (Dkt. 45 at 4–6.) With respect to that claim, the Warden alleges that the Appellate Court of Illinois (the last state court to rule on the merits of Spears's claims) reasonably applied clearly established federal law in holding that appellate counsel was not ineffective for not raising Spears's speedy trial claims. *Id.* at 6–16.

### I. Exhaustion and Procedural Default

Under AEDPA, a "federal court will not hear a state prisoner's habeas claim unless the prisoner has first exhausted his state remedies by presenting the claim to the state courts for one full round of review." *Crutchfield v. Dennison*, 910 F.3d 968, 972 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1587 (2019) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)). Congress codified this requirement "to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation." *Id.* at 972–73 (quoting *Davila*, 137 S. Ct. at 2064) (internal punctuation omitted); *see* 28 U.S.C. § 2254(b)(1)(A).

Additionally, the "rule of procedural default is an important corollary to the exhaustion requirement: A federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Id.* at 973 (quoting *Davila*, 137 S. Ct. at 2064) (internal punctuation omitted). A federal court may review a defaulted claim, however, "if the prisoner establishes cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation . . . A federal habeas court may also excuse a procedural default if the prisoner makes a convincing showing of actual innocence." *Id.* at 973 & n.2 (internal citations and quotations omitted).

In this case, Spears failed to invoke one complete round of Illinois's established appellate review process by not pursuing certain claims on postconviction appeal. The claims omitted on postconviction appeal include: ineffective assistance of trial counsel for failure to challenge the charging instrument; and ineffective assistance of appellate counsel for failure to raise the Confrontation Clause, charging instrument, and sentencing issues. (Dkt. 44-6, Ex. F, Spears's Postconviction Principal Appellate Brief; Dkt. 44-8, Ex. H, Spears's Postconviction Reply Appellate Brief); *see Spears*, 2018 IL App (2d) 151162-U at ¶ 21. On top of that, Spears never raised the substantive claim (distinct from the ineffective assistance claim) that the trial court's admission of the recorded statement violated the Confrontation Clause in state court. Therefore, these five claims are unexhausted and unreviewable in federal court.

Aside from non-exhaustion, Spears procedurally defaulted his claim that the trial court erred in admitting the recorded statement under state law because the appellate court resolved it on the adequate and independent state procedural rule of forfeiture. *See Spears*, 2014 IL App (2d) 120817-U, ¶¶ 92–93, 96, 101, 103. On direct appeal, Spears conceded that he did not preserve the recorded statement issue for appeal but maintained that the admission of the statement satisfied the narrow plain error exception to the general forfeiture rule. *See id.* at ¶¶ 92–93.

The court concluded that the trial court did not plainly err in admitting the statement. *See id.* ¶¶ 101, 103. That denial of relief is an adequate and independent ruling that bars federal habeas review of the claim. *See Richardson v. Lemke*, 745 F.3d 258, 269, 271–72 (7th Cir. 2014) (finding a petitioner procedurally defaulted a claim that he forfeited in the Illinois courts) (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)); *see also Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010).[†]

There is no excuse for these failures. Spears did not even try to establish cause for them, let alone prejudice resulting from the alleged violations. Spears does not vie for actual innocence either. Because he failed to argue for either ground to excuse the application of the Warden's affirmative defenses, the Court cannot consider his claims. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Even if Spears contended that his appellate counsel's ineffectiveness caused the omission of certain

---

[†] Alternatively, the state law challenge to the admission of the recorded statement is not cognizable on federal habeas review because it rests on a binding interpretation of state law. *See Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1340 (2019) (first citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, (1991); then citing *Ben–Yisrayl v. Buss*, 540 F.3d 542, 555 (7th Cir. 2008)); *Sennholz v. Strahota*, 722 F. App'x 569, 571 (7th Cir. 2018).

claims, he did not separately exhaust those ineffectiveness claims, so that is a losing argument, too. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (first citing *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009); then citing *Edwards v. Carpenter*, 529 U.S. 446, 452–54 (2000)); *see also Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013) (internal citations omitted). In sum, six of Spears's seven claims are not eligible for federal habeas review.

## II. Ineffective Assistance of Appellate Counsel: Speedy Trial Issues

All that is left, then, is Spears's claim that appellate counsel ineffectively assisted him by failing to raise his speedy trial arguments. "To prevail on a claim that appellate counsel's performance was constitutionally deficient, [Spears] must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and 'clearly stronger' than the issues counsel did raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 283 (2017) (citing *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)).

What is more, Spears would also "have to establish that counsel's choice to exclude the additional issues prejudiced him, i.e., that it's reasonably probable that including the omitted issues would have changed the outcome of his direct appeal." *Id.* (citing *Stallings v. United States*, 536 F.3d 624, 627–28 (7th Cir. 2008)). In other words, "[p]ursuit of unsuccessful arguments and claims does not show ineffective assistance of counsel." *Brown v. Brown*, 847 F.3d 502, 514 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018).

Here, although the Appellate Court of Illinois did not explicitly compare the relative strength of appellate counsel's arguments (derived from *Smith v. Robbins*, 528 U.S. 259, 288 (2000)), "it reasonably concluded under *Strickland* that appellate counsel was not ineffective for failing to press a weak argument." *Morens v. Meisner*, 702 F. App'x 446, 452 (7th Cir. 2017). The Court thus understands Spears's argument to be that the appellate court unreasonably applied *Strickland* when it held that appellate counsel did not ineffectively assist him when counsel neglected to raise a speedy trial claim based on: (1) a state statute setting the speedy trial clock; (2) a state law concerning compulsory joinder; and (3) the federal Constitution.

As stated previously, a "federal court cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) (internal citations omitted); *see King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016). Because the Illinois Appellate Court's first two conclusions depend on state law determinations, it is not the province of this Court to reexamine those questions. *See Spears*, 2018 IL App (2d) 151162-U at ¶¶ 26, 31, 35, 44. The state court's decisions on these points controls.

Still, Spears contends that his 14-month recovery (the so-called "delay")—sandwiched between the date the arrest warrant issued and the date of his arrest—violated his right to a speedy trial under the Sixth Amendment. But the Supreme Court has held that the speedy-trial clock does not begin to tick "'before a defendant is indicted, arrested, or otherwise officially accused.'" *United States v. Richardson*, 780 F.3d 812, 813 (7th Cir. 2015) (quoting *United States v. MacDonald*, 456 U.S. 1, 6

(1982)). In Illinois, a felony complaint is not an official accusation that triggers the protection of the Sixth Amendment. *See People v. Mitchell*, 825 N.E.2d 1241, 1244 (Ill. App. Ct. 2005).

In this case, although a felony complaint and arrest warrant issued, the authorities did not arrest Spears for 14 months because of his medical condition. What is more, the speedy-trial clock would have only begun to tick upon his arrest if the authorities detained him pending indictment. *See United States v. Loud Hawk*, 474 U.S. 302, 310 (1986) ("when no indictment is outstanding, only the 'actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment . . .'"). Nobody detained Spears before his arrest because he was under the care of medical professionals working to save his life, not in the custody of the police. The Illinois Appellate Court reasonably applied *Strickland* in ruling that appellate counsel prudently elected not to raise this weak claim.

To be sure, "[t]he Due Process Clause protects against delay before formal accusation." *United States v. Figueroa*, 228 F. App'x 611, 613 (7th Cir. 2007) (citing in part *MacDonald*, 456 U.S. at 7); *but see United States v. Clark*, 754 F.3d 401, 405 (7th Cir. 2014) ("Someone who is only the target of a criminal investigation has no right to have the government wrap up its investigation quickly and bring charges, even if the target is aware of the investigation."). Spears, however, failed to exhaust his separate and distinct claim that the delay prior to his arrest and indictment violated the Fifth Amendment. Spears pleaded the allegation in his postconviction petition,

and like many of his other claims, abandoned that ground on postconviction appeal. (Dkt. 44-6, Ex. F; 44-8, Ex. H); *see Spears*, 2018 IL App (2d) 151162-U at ¶ 48. Consequently, the Court cannot review his unexhausted claim because Spears failed to give the Illinois courts the first crack at it.

## CONCLUSION

In closing, it is worth noting that there are good reasons why appellate counsel need not "present every non-frivolous claim on behalf of her client." *Makiel v. Butler*, 782 F.3d, 882, 897 (7th Cir. 2015) (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)). The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (quoting *Smith v. Murray*, 477 U.S. 527, 536, (1986)).

Spears's counsel carefully selected just a few issues on appeal, which as it turns out, helped them receive more attention than they otherwise would have. In fact, counsel succeeded in vacating one of Spears's convictions. *Cf. Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019), *reh'g denied* (Feb. 14, 2019). Spears may fault his counsel for that, but the Court cannot. Accordingly, the Court denies Spears's petition for a writ of habeas corpus (Dkt. 1). Furthermore, the Court declines to issue a certificate of appealability because Spears failed to clearly demonstrate the denial of a constitutional right, or that reasonable jurists would disagree with this Court's resolution of Spears's habeas petition on the grounds of exhaustion, procedural default,

and ineffective assistance of counsel. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 485 (2000).

_____
Virginia M. Kendall
United States District Judge

Date: August 23, 2019